IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| DANIEL BYRGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13CV031–HEH |
| | ) | |
| VIRGINIA STATE UNIVERSITY | ) | |
| BOARD OF VISITORS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
(Granting Defendants' Motion to Dismiss)

Plaintiff Daniel Byrge ("Byrge") brought this action alleging that his employer discriminated against him on the basis of his race and also alleging injury to his professional reputation in violation of state law. His employer, the Virginia State University ("VSU") Board of Visitors ("Board of Visitors"), and the individual members of the Board ("Board Members," or collectively with the Board of Visitors, "Defendants"), move to dismiss for failure to state a claim.[1] The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons set forth herein, the Court will grant the motion and dismiss the case.

---

[1] On January 22, 2013, Byrge entered his Notice of Voluntary Dismissal of Defendant Virginia State University (ECF No. 4) pursuant to Fed. R. Civ. P. 41, and this Court ordered the dismissal *without prejudice* (ECF No. 5). He subsequently filed an Amended Complaint which is now the subject of the Defendants' Motion to Dismiss.

# I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Byrge's well-pleaded allegations to be true, and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewing the pleadings through this lens, the facts are as follows for purposes of addressing the motion.

In August 2004, VSU hired Byrge as a tenure-track Assistant Professor. (Am. Compl. ¶ 9, ECF No. 6.) Byrge is a Caucasian male and VSU is a historically black university funded by the Commonwealth of Virginia and located in Chesterfield County, Virginia. (*Id.* at ¶¶ 3-4.) Byrge's employment contract was made subject to "the prevailing policies, resolutions, and regulations of the Board of Visitors and the policies governing employment as provided in the University Handbook, as amended by subsequent Board actions, and the Bylaws of the Board of Visitors." (*Id.* at ¶ 10.) According to Byrge, one of the key implicit provisions of the contract was that any professor whose contributions to the University exceeded "merely adequate" would be granted tenure. (*Id.* at ¶ 11.)

Under VSU's "Criteria for the Award of Tenure to Collegiate/Instructional Faculty" ("Criteria for Tenure"), tenure was to be granted to faculty "who provide evidence that their continued employment will enhance the mission and goals of the University ... [and] [contribute] to the intellectual life and the well-being of the community." (*Id.* at ¶ 19.) The Criteria for Tenure also contained eight baseline

2

standards for promotion which included: an earned terminal degree in the discipline being taught or its equivalent; four years of full-time post-secondary teaching experience at the Assistant Professor rank or its equivalent; completion of the tenure probationary period designated for VSU (generally four years); ratings of "outstanding" in teaching, at least "noteworthy" in either scholarly research or professional service, and "satisfactory" in the third category (as between scholarly research and professional service) by at least 50% of the evaluators using departmental promotion and tenure evaluative instruments; and, fulfillment of any specific tenure criteria established by the individual department or school. (*Id.* at ¶ 33.) The Criteria for Tenure also provided: "[T]enure is not guaranteed as a matter of course to those who are on probationary contracts and whose contributions to the University are merely adequate. Employment during the probationary period is limited to six annual contracts, each issued for a single year." (*Id.* at ¶ 31.)

Between 2004 and 2010, Byrge reportedly endeavored to satisfy all of the Criteria for Tenure previously set forth. Specifically, Byrge claims to have served on several university committees, enlisted a special adviser, brought other special guests to the Mass Communications Club, and collaborated with other faculty to initiate and organize the now annual VSU Film Festival at the school. (*Id.* at ¶¶ 22-24.) Also, Byrge allegedly maintained continuous employment as an Assistant Professor at VSU, having received nine annual contracts from VSU, exceeding the probationary limit of six annual contracts. (*Id.* at ¶¶ 31 and 43.)

In furtherance of his pursuit for tenure, Byrge purportedly sought and procured the written endorsements of both Dr. Andrew Kanu ("Dr. Kanu")—Interim Dean of the

3

School of Liberal Arts and Education—and Associate Professor Ishmail Conway ("Professor Conway")—Mass Communications Department Chairman. (*Id.* at ¶¶ 26-27.) Dr. Kanu's endorsement was given on January 19, 2010 and Professor Conway's recommendation was given on March 10, 2010. (*Id.*) Byrge alleges that Conway's endorsement was particularly lengthy, citing many specific examples of Byrge's teaching quality, scholarly research/creative activity, and professional service. (*Id.* at ¶ 27.) Byrge was persuaded that, as to all of the aforementioned tenure criteria, he met the requisite standards. (*Id.* at ¶¶ 34-41.) Yet, despite meeting the criteria and securing the two recommendations, at some point between March and June 2010 his application for tenure and promotion to Associate Professor was denied by the University Promotion and Tenure Committee ("UPTC"). (*Id.* at ¶ 44.)

On June 14, 2010, a hearing was held with Byrge and the Appeals Subcommittee of the Faculty Senate Reconciliation Committee ("Appeals Committee") to address the denial of Byrge's application for tenure. (*Id.*) The Appeals Committee reportedly gave its recommendation that Byrge be awarded tenure and promoted to Associate Professor and voted to support Byrge's appeal. (*Id.*) In a letter dated June 29, 2010, VSU President Eddie N. Moore, Jr. accepted the Appeals Committee's recommendation and advised that Dr. Keith T. Miller would forward Byrge's file to Defendants for official consideration. (*Id.* at ¶ 47.)

Despite his successful appeal, on December 9, 2010, Defendants notified Byrge of their unanimous decision to deny him tenure and promotion. As their reasons, they indicated that there was insufficient documentation in Byrge's file to support an

"outstanding" rating in the area of teaching. (*Id.* at ¶ 48.) Defendants instead offered Byrge an additional one-year faculty contract. (*Id.*) On May 12, 2011, VSU offered Byrge a terminal employment contract for the 2011-2012 school year that would expire on May 14, 2012. (*Id.* at ¶ 62.)

According to information obtained by Byrge, another qualified Caucasian male professor at VSU in the same department was also allegedly denied tenure in 2010. (*Id.* at ¶ 53.) Similarly, a Caucasian female professor at VSU was denied tenure that same year. (*Id.* at ¶ 52.) In this female's personnel file a comment was included that, "she might not be able to relate to ou[r] black students." (*Id.*)

On December 13, 2012, Byrge filed a complaint in the Chesterfield County Circuit Court (ECF No. 1–2), which Defendants timely removed to this Court (ECF No. 1). After Byrge filed his Amended Complaint (ECF No. 6) on March 22, 2013, Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 9).[2] The matter has been fully briefed and the action is before the Court for consideration of the Motion to Dismiss.

---

[2] Byrge filed his Amended Complaint against the Board of Visitors as a distinct entity along with the Board Members, each in their individual and official capacities, on March 22, 2013. (*Id.* at ¶¶ 5-8.) The Defendants are Felix Davis, Jr., Rector; Retired Brigadier General Alfred J. Cade, Secretary; Harry Black; Dr. Mary Hatwood Futrell; E. Ray Murphy; Daphne M. Reid; James H. Starkey, III; Barbara Steverson; Spencer L. Timm; Dr. Benjamin U. Nwoke, Faculty Member Representative; and LaJessica Stringfellow, SGA Representative. (*Id.* at ¶ 6.)

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). A complaint need only have "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (internal quotation marks omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. In considering a motion to dismiss under Rule 12(b)(6), the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Martin,* 980 F.2d at 952.

A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.

6

*T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

### III. DISCUSSION

Defendants move to dismiss Byrge's § 1983 racial discrimination claims in Counts One, Two, and Three against the VSU Board of Visitors as an entity as barred by the Eleventh Amendment. Additionally, Defendants move to dismiss Byrge's allegations of racial discrimination as to all parties contending that the facts alleged in Byrge's Amended Complaint do not state a facially plausible claim of racial discrimination in the employment context. Finally, Defendants move to dismiss Count Four, which alleges a state law claim for civil conspiracy under Va. Code §§18.2-499, -500. The Court will address these arguments in sequence.

*A. VSU Board of Visitors—Eleventh Amendment Immunity*

First, the Board of Visitors moves for dismissal on Eleventh Amendment immunity grounds. Initially, Byrge brought suit in Virginia's state courts against VSU

---

[3] Defendants also seek dismissal of claims against the VSU Board of Visitors as a distinct entity on the grounds of Eleventh Amendment immunity under a Rule 12(b)(1) standard of review, which governs motions to dismiss for lack of subject matter jurisdiction. *See Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 782-83 (E.D. Va. 2003) (articulating 12(b)(1) standard of review, evidentiary standard, and burden of establishing subject matter jurisdiction); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991), *cert. denied*, 503 U.S. 984 (1992) (same). Whether Eleventh Amendment immunity is a jurisdictional matter is currently an unsettled question, although in the Fourth Circuit it has been suggested that it is not jurisdictional. *See Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 361, 391 (1998); *see also Bosely v. Lemmon (In re Mills)*, 287 Fed. App'x 273, 2008 U.S. App. LEXIS 16287 (4th Cir. W. Va. 2008). In this case, Defendants' challenge is more properly addressed as a 12(b)(6) issue and since it does not implicate the merits of the case the court will address it as such. The analysis on this motion, though slightly different under the 12(b)(6) standard, is essentially the same and the outcome is not affected.

and its Board of Visitors as distinct entities, in addition to the Board Members individually, seeking both legal and equitable remedies. Defendants collectively removed that action to federal court. By removing the case to this Court, the Board of Visitors has waived Eleventh Amendment immunity. *Lapides v. Bd. of Regents*, 535 U.S. 613, 622-23 (2002). Thus, the Court will deny the motion to the extent that it is based on Eleventh Amendment immunity, and address the merits of the allegations under Fed. R. Civ. P. 12(b)(6) generally.

### B. Counts One, Two, and Three: 42 U.S.C. § 1983

Byrge alleges in Count One that Defendants are liable under 42 U.S.C. § 1983 for racial discrimination in violation of 42 U.S.C. § 1981 and the Equal Protection provisions of the Fourteenth Amendment. In repetitive fashion, Byrge re-alleges the Fourteenth Amendment violation and the § 1981 violation in Counts Two and Three respectively. In this way, Counts One through Three are essentially identical, and so these claims will be analyzed as such in addressing Defendants' Motion to Dismiss.

42 U.S.C. § 1983 provides:

> Every person who, under color [of law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

The elements for a *prima facie* case of employment discrimination under § 1983 are the same as those for Title VII or § 1981 claims. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Cuffee v. Tidewater Community College*, 409 F. Supp. 2d 709, 716

(E.D. Va. 2006); *see also Demuren v. Old Dominion University*, 33 F. Supp. 2d 469, 478 (E.D. Va. 1999).

To state a *prima facie* case of employment discrimination, Byrge must show: (1) that he is part of a protected class; (2) that he was meeting his employer's legitimate performance expectations; (3) that he was subjected to an adverse employment action; and, (4) that the circumstances of the adverse action "rationally support the inference that the adverse employment action was motivated by unlawful considerations." *Cuffee*, 409 F. Supp. 2d at 717; *see also St. Mary's Honor Cir. v. Hicks*, 509 U.S. 502, 506 (1993); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). Byrge has sufficiently alleged that he is part of a protected class and that the decision of Defendants to deny him tenure is an adverse employment action, but he fails to allege sufficient facts to satisfy the remaining elements.

With regard to an employer's evaluation of an employee's performance, "[i]t is the perception of the *decision maker* which is relevant ...." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) (emphasis added). Byrge set forth the Criteria for Tenure in his Amended Complaint, along with the recommendations of two department leaders at VSU, and also the text of the letter issued by the Appeals Committee recommending him for tenure. Beyond this, Byrge asserts in conclusory fashion that he "met and meets" the applicable standards. (Am. Compl. at ¶ 22.) However, the two entities at VSU that ultimately possessed the responsibility and authority for awarding tenure—the UPTC and

9

the Board of Visitors—each denied Byrge's application. The specific reasons for the initial denial of tenure by the UPTC are not listed in the Amended Complaint.

Byrge asserts that the reason given by Defendants for denial of tenure was that the documentation in Byrge's file did not "support the requirement of a rating of 'outstanding' in the area of teaching." (Am. Compl. at ¶ 48.) Byrge now asks this Court to infer that the independent determination made by Defendants is merely a pretext for racial discrimination, but such an inference is not reasonably supported by any of the factual allegations he has made.[4]

Byrge offers neither direct nor indirect evidence of discrimination.[5] Byrge provided details about a Caucasian female faculty member who was also denied tenure in 2010, and he expects this Court to conclude that there was a nexus between the comment in *her* personnel file about *her* ability to relate to black students and the decision by Defendants to deny *his* application for tenure. At a minimum, Byrge would need to plead

---

[4] This Court is careful to not superimpose its views as to teaching quality upon any educational institution. *See Jiminez v. Mary Washington College*, 57 F.3d 369, 376-77 (4th Cir. 1995) (noting that courts must refrain from "imposing professorial employment decisions on academic institutions"); *see also Smith v. University of North Carolina*, 632 F.2d 316, 346-47 (4th Cir.1980) (noting that tenure decisions are difficult, subjective, and scholarly). Our analysis does not delve into the rationality or wisdom of a university's decision to not grant tenure; it is limited to a probe of whether the denial of tenure was the result of unlawful discrimination. *Id.*

[5] In employment disputes such as this one, a party may prove discrimination by offering either direct or indirect evidence of the alleged conduct. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). In the absence of direct evidence of discrimination, a burden-shifting "pretext analysis" under the framework established in *McDonnell Douglas* is the appropriate next step. *Id.* at 802-06. Such an analysis is used when an employment discrimination claim is adjudicated on the merits; however, the present Rule 12(b)(6) analysis does not reach the merits of this claim. *Martin*, 980 F.2d at 952.

facts that more directly connect his own circumstances to those of his female colleague along with facts that link Defendants to the comment written in her file.

"[T]o survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dep't of Education*, 639 F.3d 91, 108 (4th Cir. 2011). Here, Byrge has pled no facts that identify any similarly situated employees at VSU, African-American or otherwise, that were treated differently as a result of discriminatory animus. In the context of racial discrimination solely against Byrge, the Motion to Dismiss will be granted.

As an alternative to his claim of racial discrimination, Byrge alleges that a policy or custom of discrimination existed at VSU. To support this theory, he points to the denial of tenure of his two Caucasian colleagues. For Byrge to prevail on the theory of a policy or custom he must prove "the existence of a practice that is widespread, pervasive and so permanent and well-settled as to constitute a custom or usage with the force of law." *Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (internal quotation marks omitted). Although the denial of tenure at a historically black university to three Caucasian professors within the same year may seem peculiar or suspicious, the factual allegations supplied by Byrge are insufficient *in toto* to provide a reasonable inference of a widespread university custom of racial discrimination with regard to the award of tenure.

Byrge has not provided additional facts indicating that these professors satisfied a key element of the *prima facie* case—that these other professors have satisfied VSU's legitimate performance expectations in their respective departments. As to the male Caucasian professor, Byrge merely states that he was denied tenure and promotion, but provides no additional facts to validate whether this professor was deemed qualified. Also, no facts are supplied to indicate any racial bias directed toward this other professor.

As to the female Caucasian professor, the notation in her file does raise the issue of whether her race played any role in the decision to deny her tenure. Yet, in this case Byrge's file is apparently void of any similar notation, and he does not allege any other such questionable circumstances for the other professor mentioned in the Amended Complaint. In other words, the female professor's circumstances do not appear to have any relation to Byrge's denial of tenure.

Byrge also asserts that VSU has a history of unlawful discrimination, but again fails to support his conclusory statement with sufficient factual allegations to raise the plausibility of the claim above the speculative level. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and thus, at least some factual allegations are needed. *Iqbal*, 556 U.S. at 678. Accordingly, this aspect of Byrge's claim also fails to cross the threshold established in *Twombly* and *Iqbal* for a Rule 12(b)(6) motion and so, the 12(b)(6) Motion to Dismiss must be granted with respect to the allegations of a policy or custom of discrimination.

### C. *Count Four: Virginia Statutory Conspiracy to Injure*

Byrge alleges that Defendants, in their individual and official capacities, worked in concert to willfully and maliciously injure his professional reputation when they voted unanimously to deny him tenure and promotion. In Count Four, he asserts that Defendants are liable for a conspiracy to injure claim under Va. Code §§ 18.2-499 and -500. For the reasons set forth below, Byrge's conspiracy to injure claim will be dismissed.

Va. Code § 18.2-499 states in pertinent part:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever ... shall be jointly and severally guilty of a Class 1 misdemeanor.

The civil relief available to persons who suffer loss from a violation of § 18.2-499 is outlined in § 18.2-500. In *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (2012), the Fourth Circuit reiterated that this statute was not intended to be made applicable to *personal* reputation, but rather is to be construed with regard to *business* and business-related interests.

> [T]he federal district courts in Virginia have consistently held that a right of action is "afforded [under these statutes] only when malicious conduct is directed at one's *business*, not one's *person*," and that the statute "focuses upon conduct directed at property, *i.e.*, one's business" and applies only to "conspiracies resulting in business-related damages."

*Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (internal footnotes omitted); *see also Andrews v. Ring*, 266 Va. 311 (2003) (tracing origins of conspiracy to injure statute

13

back to Virginia antitrust laws and emphasizing correct construction of statute bars applicability to personal or employment interests).

Byrge's action does not arise out of any business interest, but rather it arises from the decision by Defendants not to award him tenure or promotion. Tenure and promotion at a specific university are clearly employment-related interests because the grant of tenure is akin to a promise of "life-long" employment with that university. *Lieberman v. Gant*, 630 F.2d 60, 64 (2d Cir. 1980). Byrge has not pled any facts stating that he owns a business or has suffered or will suffer any business-related damages for which Defendants' actions are the proximate cause. For these reasons, Byrge's §§ 18.2-499 and -500 claims each fail as a matter of law and will be dismissed.

## IV. CONCLUSION

In sum, the Court finds that Byrge has not alleged sufficient facts to meet the requisite standard of facial plausibility. On Counts One, Two, and Three, Byrge has failed to supply enough facts to state a *prima facie* case of race based employment discrimination. As to Count Four, Byrge's claim falls outside of the scope of the statute. Accordingly, the Motion to Dismiss (ECF No. 9) will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: June 10 2013
Richmond, Virginia